### GARVEY v. CLIFFORD.

(Supreme Court, Appellate Division, First Department. June 20, 1906.)

TRUST—EXPRESS TRUSTS—DEPOSIT OF MONEY IN BANK.

Money was deposited in a savings bank in the name of the depositor, but "in trust for J. S." "J. S." was the maiden name of depositor's sister, who was known by him to be married at the time of the deposit. The interest was drawn by the depositor, and no change in the deposit was made by him on the death of the sister. *Held*, that no trust was created for the sister, which became operative on the subsequent death of the depositor.

[Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trusts, § 44.]

Patterson, J., dissenting.

Submission upon agreed statement of facts, of controversy between Nellie Garvey, administratrix of Johanna Dwyer, deceased, and Micheal J. Clifford, administrator of Patrick Sheedy, deceased. Judgment for defendant.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and CLARKE, JJ.

Leonidas Dennis and Edward J. McGuire, for plaintiff.

Charles Goldzier and House, Grossman & Vorhaus, for defendant.

CLARKE, J. On February 13, 1890, Patrick Sheedy deposited $3,-000 in the Bowery Savings Bank in the city of New York and opened an account under the following title, "Patrick Sheedy in trust for Johanna Sheedy." Sheedy kept possession of the bankbook and control of the deposit, and no one except himself and the bank had any knowledge, during his lifetime, that such an account had been opened. He drew the interest on such account down to the time of his death in the month of January, 1903; his last withdrawal being in February, 1902. After Sheedy's death, the bankbook was found among his effects. Patrick Sheedy had a sister, Johanna Sheedy, who, over 30 years before the time of said deposit in said savings bank, on February 13, 1890, had married one John Dwyer, to the knowledge of her brother Patrick. From the time of her marriage Johanna was known by the name of Johanna Dwyer, and her brother, Patrick Sheedy, was on friendly terms with her and was in the habit of visiting her up to the time of her death, which occurred on the 3d day of August, 1898. After her death, which was known to Sheedy, he made no change in the account in the savings bank, but continued to draw the interest therefrom and apply it to his own uses, as he had from the beginning, for the four years which intervened between the death of Johanna and his own.

Both Johanna Dwyer and Patrick Sheedy died intestate, and this controversy is between the administratrix de bonis non of Johanna Dwyer, who claims that the amount deposited in the savings bank was a trust account for Johanna Dwyer, and the administrator of Sheedy. The questions arising from accounts in savings banks stated to be in trust for another, and yet remaining under the control of the depositor, have been many times before the courts of this state, and the history of judicial interpretation, and the growth thereof, of such alleged trusts, has been traced and expounded by Judge Vann in the Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711, and who for the court laid down the following rule:

"After much reflection upon the subject, guided by the principles established by our former decisions, we announce the following as our conclusion: A deposit by one person of his own money, in his own name as trustee for another standing alone does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely revocable at will until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration such as delivery of the passbook, or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

Under this rule, if this account had been opened by Sheedy in trust for Johanna Dwyer, and Sheedy had died before Johanna Dwyer, although no act upon his part by declaration, delivery of the passbook, or notice to the beneficiary had completed the gift, yet the presumption would have risen that an absolute trust had been created for Johanna Dwyer; and she would have been entitled to take. But that question is not before us. In the first place, the account was not opened in trust for Johanna Dwyer, but in trust for Johanna Sheedy, a name which had ceased to represent a living person, to the knowledge of the depositor, for some 30 years prior to the deposit. It seems to me

to be a violent presumption to hold that Sheedy intended to create a trust for Johanna Dwyer. We are dealing solely with presumptions to be drawn from an entry made in a bank account without the knowledge of any other person than the depositor and the bank. If Sheedy intended this money to go to his sister, if he intended for her benefit a revocable or irrevocable trust, the natural way would have been to have stated in trust for Johanna Dwyer, for, under those circumstances, no such proof of the identity of the cestui que trust as is now required would have been necessary. Here we have to establish that a woman, who for over 40 years had been known as Johanna Dwyer, was intended by the name Johanna Sheedy. He was on good terms with his sister, he visited her frequently, and yet during all these years he never in any way indicated to her or any of her family that this deposit had been made for her, and, after her death, he continued the account as before, and continued to use it as his own and draw the interest thereon for his own purposes. The natural inference seems to me to negative the idea that the trust was intended for Johanna Dwyer, but, on the contrary, to establish that the money was his own; that he contemplated no gift thereof, but that the account was opened in the form in which it was, using a name familiar to him, but which was in effect fictitious, for some one of those reasons alluded to by Judge Andrews in Beaver v. Beaver, 117 N. Y., at page 430, 22 N. E. page 942 (6 L. R. A. 403, 15 Am. St. Rep. 531) where he says:

"We cannot close our eyes to the well-known practice of persons depositing in savings banks money to the credit of real or fictitious persons, with no intention of divesting themselves of the ownership. It is attributable to various reasons: Reasons connected with taxation; rules of the bank limiting the amount which any one individual may keep on deposit; the desire to obtain high rates of interest, where there is a discrimination based on the amount of deposits; and the desire, on the part of many persons, to veil or conceal from others knowledge of their pecuniary condition. In most cases where a deposit of this character is made as a gift, there are contemporaneous facts or subsequent declarations by which the intention can be established, independently of the form of the deposit. We are inclined to think that to infer a gift from the form of the deposit alone would, in the great majority of cases, and especially where the deposit was of any considerable amount, impute an intention which never existed and defeat the real purpose of the depositor."

In the second place, the depositor did not die before the beneficiary without revocation; but, on the contrary, the alleged beneficiary died before the depositor. Whatever intention he may have had, so far as Johanna was concerned, if he had any, was defeated by her death. The only basis for these so-called savings bank trusts, in the absence of any proof of gift inter vivos, has been the doctrine of a tentative or revocable trust, which, in the absence of proof of revocation prior to the death of the depositor, took effect as a good trust upon his death. Upon the facts disclosed by this record, it would be carrying this doctrine far beyond any recorded case to hold that a tentative trust for the benefit of an individual survived her death and the death of the depositor and carried title to the beneficiary's representatives.

I think that the plaintiff has failed to make out a case, and that judgment should be entered for the defendant, with costs.

All concur, except PATTERSON, J., who dissents.